UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

T.C. DEVELOPMENT AND DESIGN, INC.,
d/b/a Condor Products,

        Plaintiff,

        v.                                                   Case No. 07-C-0861

DISCOUNT RAMPS.COM, LLC;
DISCOUNT RAMPS.COM, TRAILER
& SPORTS DIVISION, LLC;
JOEL LEDERHAUSE;
AIMEE LEDERHAUSE;
RAMP CONNECTION, LLC;
JARED NORTHEY,
d/b/a Ramp Connection,
EASY RIDE TRAILERS AND
ACCESSORIES, INC.,
ROBERT JANESZ, and
ERT CHOCKS, LLC.

        Defendants.

---

LEXINGTON INSURANCE COMPANY,

        Plaintiff in Intervention,

v.

DISCOUNT RAMPS.COM LLC;
DISCOUNT RAMPS.COM, TRAILER
& SPORTS DIVISION, LLC;
JOEL LEDERHAUSE; AND
AIMEE LEDERHAUSE.

        Defendants in Intervention.

---

DECISION AND ORDER GRANTING LEXINGTON INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT

This court granted Lexington Insurance Company's motion to intervene as a matter of right and to bifurcate and stay the issue of liability while determining whether defendants Discount Ramps.com, LLC, Discount Ramps.com, Trailer & Sports Division, LLC, Joel Lederhause, and Aimee Lederhause have coverage under the Lexington Policy. Lexington has since filed a motion for summary judgment on its declaratory judgment complaint. For the reasons set forth below, Lexington's motion will be granted.

FINDINGS OF FACT

Defendants have not responded to Lexington's proposed findings of fact. Therefore, Lexington's proposed findings are deemed admitted for purposes of resolving the summary judgment motion. Civ. L. R. 56(f)(4) (E.D. Wis. 2010).

In this diversity action, T.C. Development and Design, Inc., d/b/a Condor Products ("T.C."), is a corporation organized under the State of Illinois with its principal place of business in Cortland, Illinois. (Second Am. Compl. 5.) Lexington Insurance ("Lexington") is a surplus lines insurance carrier, incorporated and organized under the laws of the State of Delaware with its corporate headquarters in Boston, Massachusetts. (Stanton Aff. 4) Discount Ramps.com LLC and Discount Ramps.com, Trailer and Sport Division LLC are Wisconsin limited liability companies with their principal place of business in West Bend, Wisconsin. (Doc. 20; Answer to Am. Compl. 6, 7.) Aimee and Joel Lederhause are citizens of West Bend, Wisconsin. (Answer to Declaratory J. Compl. 8,9.)

On or about September 21, 2007, T.C. filed a complaint against Jared Northey, Discount Ramps.com LLC, Discount Ramps.com Trailer & Sport Division LLC, Joel Lederhause, Aimee Lederhause and Ramp Connection LLC. (Compl.) Later, T.C. amended to add Easy Ride Trailers and Accessories, Inc., and Robert Janesz, alleging

2

patent infringement (Counts I and II), trademark infringement and false designation of origin (Count III), unfair competition and deceptive trade practices (Count IV), Wisconsin fraudulent representation and improper business practices (Count V), and injury to business, restraint of will (Count VI). (Am. Compl.) Recently, the court granted plaintiff's leave to file a second amended complaint adding new defendant ERT Chocks, and adding Easy Ride Trailers and Accessories, which was dismissed without prejudice when service was not effectuated. (Second Am. Compl.) Counts I through VI essentially remain the same.

Lexington issued commercial general liability insurance policy number 6762090 to Discount Ramps effective from September 28, 2006, to September 28, 2007. (Stanton Aff 4-11, Ex. 1.) The Lexington Policy names Discount Ramps.com., LLC and Lite Aluminum Products, Inc. as insureds, and limits coverage under personal and advertising injury liability to $1 million per person or organization. (*Id.* at Declarations Page.)

Under Coverage A of the Lexington Policy, Lexington "will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damages' to which this insurance applies." (*Id.* at Section I- Coverages, Coverage A. ¶ 1.a.) "Property damage" is defined as:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or be deemed to occur at the time of the "occurrence" that caused it.

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be

Case 2:07-cv-00861-CNC   Filed 03/31/11   Page 3 of 14   Document 89

>           deemed to occur at the time of the "occurrence"
>           that caused it.
>
>      For purposes of this insurance, electronic data is not tangible
>      property.
>
>      As used in this definition, electronic data means information,
>      facts or programs stored as or on, created or used on, or
>      transmitted to or from computer software, including systems
>      and applications software hard or floppy disks, CD-ROMS,
>      tapes, drives, cells, data processing devices or any other
>      media which are used with electronically controlled equipment.

(*Id.* at Lexington Policy Section IV - Definitions ¶ 17.)

Meanwhile, Coverage B of the Lexington Policy provides Lexington "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (*Id.* at Section I coverages, Coverage B. ¶ 1.a.) "Personal and advertising injury" includes consequential "bodily injury," arising out of one or more of the following offenses in relevant part:

>      f.    The use of another's advertising idea in your
>            "advertisement"; or
>
>      g.    Infringing upon another's copyright, trade dress
>            or slogan in your "advertisement."

(*Id.* at Section IV - Definitions ¶ 4.)

The Lexington Policy contains the following relevant exclusion for Infringement of Intellectual Property:

>      This insurance does not apply to:
>
>      I.    Infringement of Copyright, Patent, Trademark or
>            Trade Secret
>            "Personal and advertising injury" arising out of
>            the infringement of copyright, patent, trademark,
>            trade secret or other intellectual property rights.
>            However, this exclusion does not apply to

4

> infringement, in your "advertisement", of copyright, trade dress or slogan.

(*Id.* at Coverage B., Exclusions ¶ 2.i.)

"Advertisement," as used in the exclusion, is defined as a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definitions:

> a. Notices that are published include material placed on the Internet or similar electronic means of communication; and
>
> b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement."

(*Id.* at Section IV Definitions 1.).

In addition, the Lexington Policy excludes actions for the knowing violation of rights of another:

> This insurance does not apply to:
>
> a. Knowing Violation of Rights of Another
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "Personal and advertising injury."

(*Id.* at Section I Coverages Coverage B., Exclusions ¶ 2.a.)

Finally, the Lexington Policy contains the following relevant exclusion for material published with knowledge of falsity:

> This insurance does not apply to:

5

> b. Material Published With Knowledge of Falsity
> "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

(*Id.* at Coverage B, Exclusions ¶ 2.b.)

Under the Lexington Policy, an insured is a person named on the Declaration page of the policy. An "insured" can include:

> SECTION II - WHO IS AN INSURED
>
> 1. If you are designated in the Declarations as:
>
>    C. A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your insureds.

(*Id.* at Section II - Who is an Insured, ¶ I.c.)

Lexington has agreed to defend Discount Ramps.com, LLC, Joel Lederhause, and Aimee Lederhause subject to a complete reservation of rights. (Berdelle Aff. 5-6, Ex. C.)

## CONCLUSIONS OF LAW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. Once the

6

moving party has met its burden, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24, 106 S. Ct. 2548. The evidence is viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

At issue is whether Lexington has a duty to defend or indemnify Discount Ramps.com LLC, Joel Lederhause, Aimee Lederhause, and Discount Ramps.com, Trailer and Sport Division LLC. Defendants assert that, at a minimum, the second amended complaint is "incredibly vague" as to "which actions were allegedly wrongful," "which defendants committed which allegedly wrongful actions," and "when those actions allegedly occurred." According to defendants, the issue of coverage is fairly debatable.

Defendants state correctly that the duty to defend exists if any claim arguably falls within the policy coverage and that coverage need only be "fairly debatable." *Radke v. Fireman's Fund Ins. Co.*, 217 Wis. 2d 39, 44, 577 N.W.2d 366 (Ct. App. 1998). However, an insurance company that disputes coverage may seek to bifurcate the trial and obtain a declaratory judgment on coverage in advance of the determination of liability. *Id.* Because Lexington is seeking a bifurcated adjudication on the issue of coverage, the duty to defend ends if the coverage issue is resolved in its favor. *See Kenefick v. Hitchcock*, 187 Wis. 2d 218, 235, 522 N.W.2d 261 (Ct. App. 1994),

Generally, insurance policies are construed as they would be understood by a reasonable person in the position of the insured. *Kremers-Urban Co. v. American Emp'rs*

7

*Ins. Co.*, 119 Wis.2d 722, 735, 351 N.W.2d 156 (1984).[1] "An insurance policy is not interpreted in a vacuum or based on hypotheticals. It is tested against the factual allegations at issue." *Estate of Sustache v. American Family Mutual Insurance Co.,* 2008 WI 87, 311 Wis.2d 548, 751 N.W.2d 845 (quoting 2 Arnold P. Anderson, Wisconsin Insurance Law § 7.26, at 25 (5th ed. 2004)). Reasonable doubts about the meaning of uncertain policy language must be resolved in favor of the insured. *Mooren v. Economy Fire & Cas. Co.*, 230 Wis.2d 624, 632, 601 N.W.2d 853 (Ct. App. 1999).

When construing policies, the Wisconsin Supreme Court has explained a three-step coverage analysis. *Am. Family Mut. Ins. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65. First, the court examines the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. *Id.* If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. *Id.* Second, if the claim triggers the initial grant of coverage in the insuring agreement, the court examines the various exclusions to see whether any of them preclude coverage of the present claim. *Id.* Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain and any ambiguities are resolved in favor of coverage. *Varda v. Acuity*, 2005 WI App 167, ¶ 9, 284 Wis.2d 552, 702 N.W.2d 65. Third, if a particular exclusion applies, the court then looks to see whether any exception to that exclusion reinstates coverage. Am. Girl, Inc., 2004 WI 2, ¶ 24. An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not

---

[1] The parties have not raised any conflict of law issue or otherwise cited to a choice of law provision in the Lexington Policy. The court will apply Wisconsin law, as cited by the parties, in this diversity action. See *RLI Insurance Company v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008).

create coverage if the insuring agreement precludes it or if a separate exclusion applies. *Id.*

T.C.'s second amended complaint alleges patent infringement, trademark infringement and false designation of origin, unfair competition and deceptive trade practices, Wisconsin fraudulent representations and improper business practices, and injury to business, restraint of will. Specifically, T.C. submits that, "upon information and belief, after a reasonable opportunity for further investigation and/or discovery, there is likely to be evidentiary support that Lederhause had knowledge of and actively participated in, supervised and was personally responsible for the development and implementation of the improper and illegal use of Plaintiff's registered trademark ...." (Second Am. Compl. 12.) T.C. also maintains that "each of the defendants" was aware of the patents owned by T.C. and "knowingly and willfully" manufactured, used, sold and offered for sale products that directly copied and infringed the U.S. Patents owned by T.C. (Second Am. Compl. 22.) In addition to claiming patent infringement, T.C. accuses the defendants of using T.C.'s registered trademark in meta tags and other searchable aspects of their websites to solicit customers for competing products. (Second Am. Compl. 55-57.) Notably, each of the counts asserts conduct that was "deliberate," "willful," and /or "intentional." (*Id.* at 36, 46, 66, 74, 80, 85, and 90.)

The parties agree that T.C. does not allege property damage or an occurrence as the terms are defined under Section I, Coverage A, of the Lexington Policy. However, defendants argue that the allegations are covered under the "advertising injury liability" as set forth in Section I, Coverage B.

Section IV ¶ 14 defines personal and advertising injury as follows:

"Personal and advertising injury "means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;

b.   Malicious prosecution,

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.   Oral or written publication of material that violates a person's right of privacy.

f.   Use of another's advertising idea in your "advertisement"; or

g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(Stanton Aff. 10, Ex. 1.)

No charges in the second amended complaint fall within (a) - (c) or (e). Moreover, T.C. does not submit that defendants used its advertising idea (f) or otherwise infringed its copyright, trade dress or slogan (g). Indeed, the factual allegations in the second amended complaint are directed exclusively at defendants' use of T.C.'s CONDOR registered trademark rather than any copyright, trade dress or slogan. Therefore, defendants must persuade this court that the allegations fall within (d), which provides coverage for oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services.

10

Defendants point to contentions made under count two, specifically paragraph 63 of the second amended complaint. There, T.C. alleges that Discount Ramps and/or Aimee or Joel Lederhause have used the CONDOR trademark in advertisements placed in national motorcycle magazines and when individuals answering the advertisements by calling the toll free phone number in the advertisement are told that the CONDOR wheel chocks are no longer available. Individuals visiting the websites listed in the advertisement are told that the CONDOR wheel chocks are discontinued, and, if asked where it can be purchased, are told that the CONDOR is out of business. T.C. further charges that defendants Discount Ramps and the Lederhauses were aware that they did not sell CONDOR wheel chocks at the time various advertisements were placed and when the CONDOR wheel chocks were added to the website, these advertisements and web listings were placed solely for the purpose of causing a likelihood of confusion, causing initial interest confusion and diverting consumers seeking CONDOR wheel chocks to defendants' websites, then deceiving such consumers into believing that CONDOR wheel chocks were no longer available for sale. Defendants concede that the allegations of the complaint do not use the legal labels of slander, libel, or disparagement, but assert that they suggest that "Discount Ramps orally or wrote published material that, in TC Development's eyes, was disparaging." *Id.*

Lexington's duty is not unlimited and it arises based on what is alleged rather than what may have been alleged. *Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994). The Lexington Policy states that there is no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. (Stanton Aff. 10, Ex. 1,

11

Case 2:07-cv-00861-CNC   Filed 03/31/11   Page 11 of 14   Document 89

Coverage B, 1.a.)  Significantly, Lexington twice amended the complaint and has yet to allege slander, libel, or disparagement.  There is no assertion suggesting that T.C. intends to prove such claims.  Moreover, defendants have not raised any affirmative defenses typically associated with a slander, libel, or disparagement claim.  "Until a plaintiff takes advantage of the opportunity to expand the theory of the complaint, an insurer need not leap to the defense.  Otherwise every complaint would activate every of one of the defendant's insurance policies - for it is always possible that the plaintiff will elaborate its theory in a way that comes within a policy." *Western States. Ins. Co. v. Wis. Wholesale Tire, Inc.*, 184 F.3d 699, 701-702 (7th Cir. 1999).

Nevertheless, the court is mindful that Lexington's obligations are not circumscribed by T.C.'s choice of legal labels.  *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640, 644 (7th Cir. 2007).  T.C. has maintained that defendants made written statements through websites advertising the CONDOR wheel chocks and oral statements to customers calling the toll free number included in the advertisements.  Allegedly defendants have injured T.C.'s reputation and good will because the wheel chocks are not discontinued or out of business.  In Wisconsin, common law defamation requires a false statement, communicated by speech, conduct or in writing to someone other than the one defamed, and the communication must be unprivileged and tending to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her.  *Ladd v. Ueker,* 201 WI App 28, ¶ 8, 323 Wis. 2d 798, 780 N.W.2d 216.

Assuming for purposes of summary judgment that coverage exists for personal and advertising injury based on these alleged oral and written statements,

12

defendants face a difficult hurdle insofar as three exclusions apply. First, the Lexington Policy states that it does not apply to infringement of copyright, patent, trademark, trade secret, or other intellectual property rights. (Stanton Aff. 10, Ex. I, Coverage B, Exclusions ¶ 2. i.) The only exception to that exclusion is for infringement, "in your advertisement," of copyright, trade dress or slogan. (*Id.*) As discussed above, each of the claims is predicated on the infringement of T.C.'s patent or the use of T.C.'s CONDOR trademark - not copyright, trade dress or slogan—thereby falling squarely within this exclusion.

The Lexington Policy also excludes "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" and "'personal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." (*Id.* at Coverage B, Exclusions ¶ 2. a and b.) Each of the counts in the second amended complaint charges conduct by each of the defendants that falls within these exclusions. Counts I and II classify defendants' actions as "deliberate and willful," Counts III through VI assert "willful" and "intentional" conduct. Notwithstanding defendants' argument to the contrary, the second amended complaint does allege that Discount Ramps' conduct was willful and intentional. Whether their defense to these claims is that the statements were believed to have been true does not alter the second amended complaint which asserts actions that were taken with knowledge and intent.

Defendants maintain that the same policy which provides coverage for oral or written publication of material that slanders or libels a person or organization or their goods, products or services cannot exclude coverage for material published with

13

knowledge of falsity. Such interpretation would render the benefit illusory. However, coverage is illusory only when there is no foreseeable liability in any imaginable set of circumstances. *See Link v. General Cas. Co. of Wis.*, 185 Wis.2d 394, 400, 518 N.W.2d 261 (Ct. App. 1994). In Wisconsin, a plaintiff may sometimes recover from a defendant even when the defendant publishes a defamatory statement by failing to exercise due care. *Baumann v. Elliot*, 2005 WI App 186, ¶ 23, 286 Wis. 2d 667, 704 N.W.2d 361. To the extent that coverage exists for negligent defamation and T.C.'s allegations involve intent, coverage is not illusory.

As a final matter, defendants did not oppose Lexington's argument that Discount Ramps.com, Trailer and Sport Division LLC is not an insured. Discount Ramps.Com, Trailer and Sport Division LLC is not listed on the Declarations page as an insured and is not otherwise mentioned in the policy. In the absence of any evidence that Discount Ramps.com, Trailer and Sport Division LLC would fall within the definition of an insured as set forth in the Lexington Policy, Lexington owes no duty to this defendant. Now, therefore,

IT IS ORDERED that Lexington Insurance Company's motion for summary judgment is granted. The court finds that Lexington owes no duty to defend or indemnify with respect to T.C. Development and Design, Inc.'s second amended complaint.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE

Case 2:07-cv-00861-CNC    Filed 03/31/11    Page 14 of 14    Document 89