UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

T.C. DEVELOPMENT AND DESIGN INC.,
d/b/a Condor Products,

    Plaintiff,
  v.             Case No. 07-C-0861

DISCOUNT RAMPS.COM LLC,
DISCOUNT RAMPS.COM TRAILER
& SPORTS DIVISION LLC,
JOEL LEDERHAUSE, AIMEE LEDERHAUSE,
RAMP CONNECTION LLC,
JARED NORTHEY, d/b/a Ramp Connection,
ROBERT JANESZ, and ERT CHOCKS, LLC.,

    Defendants.

MEMORANDUM REGARDING CLAIM CONSTRUCTION
AND SETTING A TELEPHONIC STATUS CONFERENCE

  Having reviewed the briefs on claim construction of the two patents-in-suit, U.S. Patent No. RE42,971 ('971) and U.S Pat. 6,575,310 ('310), the court held a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed.2d 577 (1996) (hereinafter, "Markman II" ). During the hearing, the parties presented proposed definitions for four terms: surface, entrance portion, pivot pin, and angled V-flange. However, by the conclusion of the proceeding the parties had agreed that pivot pin with respect to the '971 patent should be defined as: a rod or pin that allows for the rotation movement of the saddle. Now, therefore, the court has considered the parties' arguments and construes the remaining three claims as set forth below.

  At the outset it is noted that plaintiff proffers that the file histories of the patents-in-suit include the original patents, as well as reexamination and reissue proceedings. The prosecution began with the February 9, 2001, filing of the parent application,

SN 09/780,553. The Examiner issued a restriction requirement specifying two groups of claims: (1) claims 1-21 drawn to a motorcycle lift, classified in class 254, subclass 10B; and (2) claims 22-31, drawn to a motorcycle stand, classified in class 211, subclass 162. Plaintiff prosecuted the second group in the original application, which was issued as the '310 patent.

With respect to the '310 patent, one office action issued on June 3, 2002, making a § 112 rejection requiring wording changes and a § 102(b) rejection as anticipated by Jones (U.S. Pat. No. 3,430,983). Plaintiff amended the independent claims to add the V-flange limitation of original claims 26 and 31 to the independent claims: the wheel stop including an angled V-flange extending from the upper end thereof. The claims were allowed and the '310 patent issued.

On May 21, 2009, Excel Equipment requested a reexamination. According to plaintiff, the claims were amended to clarify that the invention includes an adjustable pivoting saddle as shown in the claims that issued in the Re-examination Certificate. (Doc. 126, Ex. A.)

Next, an inter partes reexamination request was filed on behalf of Titan Marking LLC on September 2, 2010. Plaintiff filed an appeal of the Examiner's refusal of the claims. On July 18, 2012, the Trademark Trial and Appeal Board reversed the Examiner's Basis for Rejection. (Doc. 126, Ex. B.) On December 4, 2012, the Trademark Trial and Appeal Board denied Titan's request for rehearing on its merits. The final reexamination certificate has not yet issued.

The second patent-in-suit, the '971 can be traced to September 9, 2003, when the plaintiff filed a continuation application of the divisional application of the parent case

2

SN 09/780, 553, and was assigned SN 10/658,704. An office action issued on January 18, 2005, making a double patenting rejection over the '300 patent. Plaintiff filed a terminal disclaimer on March 21, 2005. SN 10/658,704 issued as U.S. Pat. No. 6,935,619 (the '619 patent) on August 30, 2005. On March 17, 2009, plaintiff filed an application to reissue the '619 patent, and on May 21, 2009, Excel Equipment LLC filed an ex parte reexamination request.

Plaintiff asserts that the claims were amended to clarify that the invention includes an adjustable pivoting saddle as shown in the claims that issued in the re-examination certificate U.S. Pat. No. 6,935,619 C1, issued on October 5, 2010. (Doc. 126, Ex. E.) The reissue prosecution continued and resulted in the issuance of U.S. Pat. No. RE42,971 on November 11, 2011.

## LEGAL FRAMEWORK

The claim construction process "'begins and ends in all cases with the actual words of the claim.'" *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). Claims terms "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art at the time of the invention." *Id.*, 415 F.3d at 1313.

A term's ordinary meaning is considered in the context of the intrinsic evidence, including the claims, specification, and prosecution history. *Id.,* 415 F.3d at 1314. Indeed,

3

the Federal Circuit describes the patent specification as "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The patent specification may "act [ ] as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id.* (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir.1995)).

In addition to the claims and prosecution, the prosecution history provides another source of intrinsic evidence. *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). This history contains the complete record of all proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims.

Finally, where the intrinsic record is ambiguous, and when necessary, district courts may rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). Aside from the dictionary definitions, no extrinsic evidence was proffered for the purpose of defining the remaining three terms.

## CONSTRUCTION

### I. SURFACE

<u>'971 Patent</u>

1. A motorcycle stand for securing a motorcycle in an upright orientation, the motorcycle having a front wheel, the stand comprising: a frame defining a

4

wheel-way along a generally longitudinal path on the frame, the wheel-way defining a surface; and a front wheel locking assembly, the front wheel locking assembly including a pivoting saddle adjustably mounted to the frame along the wheel-way, the saddle having a concave shape and including an entrance portion lying along the wheel-way for receiving the front wheel of the motorcycle and pivoting between an entry position wherein the entrance portion lies on the surface and a locking position where the entrance portion is raised from the surface when the front wheel passes over and beyond a pivot pin ....

6. A motorcycle stand for securing a motorcycle in an upright orientation, the motorcycle having at least one of a front wheel and a rear wheel, the stand comprising; a frame; and a wheel locking assembly, the wheel locking assembly configured to receive the front wheel or the rear wheel from a surface on which the motorcycle is resting, the wheel locking assembly including a pivoting saddle adjustably mounted to the frame, the saddle having a concave shape and including an entrance portion lying substantially on the surface for receiving the wheel of the motorcycle and a rear portion opposite the entrance portion, the saddle configured for pivoting between an entry position wherein the entrance portion lies on the surface and a locking position where the entrance portion is raised from the surface ....

'310 Patent

1. A motorcycle stand for securing a motorcycle in an upright orientation, the motorcycle having a front wheel, the stand comprising: a frame defining a wheel-way along a generally longitudinal path on the frame, the wheel-way defining a surface; and a front wheel locking assembly, the front wheel locking assembly including a pivoting saddle adjustably mounted to the frame along the wheel-way so that the pivoting saddle is movable along the wheel-way generally longitudinal path on the frame, the saddle having a concave shape and including an entrance portion lying along the wheel-way for receiving the front wheel of the motorcycle and pivoting between an entry position wherein the entrance portion lies on the surface and a locking position where the entrance portion is raised from the surface when the front wheel passes over and beyond a pivot ....

5. A motorcycle stand for securing a motorcycle in an upright orientation, the motorcycle having at least one of a front wheel and a rear wheel, the stand comprising: a frame; and a wheel locking assembly, the wheel locking assembly configured to receive the front wheel or the rear wheel from a surface on which the motorcycle is resting, the wheel locking assembly including a pivoting saddle adjustably mounted to the frame so that the pivoting saddle is movable along a generally longitudinal path on the frame, the saddle having a concave shape and including an entrance portion lying

5

> substantially on the surface for receiving the wheel of the motorcycle and a rear portion opposite the entrance portion, the saddle configured for pivoting between an entry position where the entrance portion lies on the surface and a locking position where the entrance portion is raised from the surface ....

For purposes of claim construction, the parties agree that surface is generally defined as "the outer face, outside, or exterior boundary of a thing; outermost or uppermost layer of area." Http://dictionary.reference.com/browse/surface?s=t. Indeed, they concur that the appropriate definition should include "the uppermost layer of the frame." However, defendants submit that the definition should end there. Plaintiff, in contrast, would add the following language: "being a location in space having length and breadth but no thickness and not necessarily having a solid structure." As explained by the plaintiff, the real issue is whether the surface must "be a physical solid structure, or can be simply a location in space."

The specification for both patents are identical and are written for a full two wheel motorcycle lift designed to raise a motorcycle from the floor or ground. The patents-in-suit cover the front wheel portion of the lift which can be used as a wheel chock. Citing Fig. 1, plaintiff asserts that the front portion of the surface extends between the ramp for entry onto the lift and cradle for holding the front wheel of the motorcycle but does not extend to the other physical surface shown by the front wheel stand. Moreover, plaintiff cites Fig. 4C as showing that the surface is a horizontal plane but need not be a solid structure.

The court agrees with defendants that the surface is not limited to the generally square-shaped middle portion but may extend forward and rearward to include the longitudinally-shaped portions of the frame where the front and rear wheels rest. Nothing in the specification or otherwise supports a definition finding that the surface arbitrarily or

6

abruptly ends beyond the space in the middle of lift.  Further, defining surface having no thickness and "not necessarily" a solid structure is nebulous.  Rather, the surface is simply "the uppermost layer of the frame."

## II. ENTRANCE PORTION

'971 Patent

1. the saddle having a concave shape and including an entrance portion lying along the wheel-way for receiving the front wheel of the motorcycle and pivoting between an entry position wherein the entrance portion lies on te surface and a locking position wherein the entrance portion is raised from the surface when the front wheel passes over and beyond a pivot pin ....

6. the saddle having a concave shape and including an entrance portion lying substantially on the surface for receiving the wheel of the motorcycle and a rear portion opposite the entrance portion, the saddle configured for pivoting between an entry position wherein the entrance portion lies on the surface and a locking position wherein the entrance portion is raised from the surface, the saddle further including a pivot between the entrance portion and the rear portion ....

'310 patent

1. the saddle having a concave shape and including an entrance portion lying along the wheel-way for receiving the front wheel of the motorcycle and pivoting between an entry position wherein the entrance portion lies on the surface and a locking position wherein the entrance portion is raised from the surface when the front wheel passes over and beyond the pivot ....

5. the saddle having a concave shape and including an entrance portion lying substantially on the surface for receiving the wheel of the motorcycle and a rear portion opposite the entrance portion, the saddle configured for pivoting between an entry position wherein the entrance portion lies on the surface and a locking position wherein the entrance portion is raised from the surface.

The parties are in agreement that the entrance portion is found at the end of the concave saddle where the wheel first comes into contact when a motorcycle is rolled onto

the stand. The major point of contention is whether there is length to the entrance portion of the saddle. Plaintiff proposes that the entrance portion be defined as "the portion fo the saddle where the wheel of a motorcycle first contacts the saddle," whereas the defendants define entrance portion as "a length of the saddle at the end of the saddle that is first contact by wheel when a motorcycle is placed in the stand." Under the defendants' definition, there must be some unspecified length so that the entrance portion lies along the wheel-way or lies on the surface. Plaintiff, in contrast, maintains that the "portion" can be defined as "a part of any whole, either separated from or integrated with it" or "a part of a whole; fraction." Http://dictionary.reference.com/browse/portion?s=t.

The court reads no requirement that the entrance portion be a particular length. By its very nature, a portion can be any part of the whole and the term "portion" is used in the specification and the claims. Accordingly, the court defines entrance portion as "a part or fraction of the saddle that is first contacted by a wheel when a motorcycle is placed in the stand." This is consistent with the saddle "including an entrance portion lying along the wheel-way for the receiving the front wheel of the motorcycle" and "an entrance portion lying substantially on the surface for receiving the wheel of the motorcycle."

**ANGLED V-FLANGE**

'310 Patent

1. the front wheel locking assembly further including a wheel stop for engaging the front wheel when the motorcycle is moved onto the stand and when the front wheel is positioned in the pivoting saddle, the wheel stop including an angled V-flange extending from an upper end thereof.

5. the wheel locking assembly further including a wheel stop at about the rear portion for engaging and securing the wheel when the motorcycle is moved onto the stand and when the wheel is positioned in the saddle beyond the

8

pivot such that the saddle pivots to the locking position, the wheel stop including an angled V-flange extending from an upper end thereof.

Plaintiff has proposed a definition of the angled V-flange as a "generally V-shaped member." Defendants add to this definition that it must be a separate or distinct portion of the wheel stop or extend beyond the sides of the wheel stop. In support, defendants cite the preferred embodiment, which explains the "wheel stop can be configured as an upwardly extending, bent channel-shaped member for engaging the front wheel. An angled V-flange can be mounted to an upper end of the wheel stop, for capturing the wheel as it is moved into the stop." ('310 Pat., Col. 3, lines 5-9).

Nevertheless, the preferred embodiment does not require that the V-flange be distinct from or project outward from the sides of the wheel stop. Rather, the angled flange, configured as a generally V- shaped member may be fully integrated into the wheel stop. The full claim term located in the reexamination certificate at column 2, lines 4-5, 34-35 appears as "the wheel stop including an angled V-flange extending from an upper end thereof. The use of the word "including" suggests that the wheel stop may have a V-flange that exists as part of the wheel stop but not separate from the wheel stop. Accordingly, the court defines an angled V-flange as a "generally V-shaped member."

A telephonic status conference is set for Monday, July 1, 2013, at 3:30 p.m. The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 14th day of June, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE